THE PEOPLE, *ex rel.* Charles Newman, *vs.* THE SAILORS' SNUG HARBOR.

By the act incorporating a charitable asylum, the trustees were authorized to make all proper and necessary rules and regulations for the government of the corporation, not inconsistent with the constitution and laws of the United States and of the State of New York. *Held* that by-laws adopted by the trustees forbidding the inmates to leave the premises without permission from the governor of the asylum, or one of his assistants, or indulging in contention, or boisterous and disorderly conversation at table, on pain of expulsion, were reasonable, proper and valid; and that for a breach thereof, by an inmate, the governor was authorized to dismiss the offender from the institution, by the direction of the executive committee.

But that on a charge being preferred against an inmate, of violating the rules, he was entitled to reasonable notice of the examination, and an opportunity of being heard, of exculpating himself and of disproving the charge.

The action and proceedings of the trustees, or the executive committee, in investigating such a charge, *it seems*, are not beyond the control of, or a review by, the Supreme Court.

It *seems* that the governor of such an institution has no power to expel an inmate for a violation of the by-laws, without the authority of the trustees, or at least, of those constituting the executive committee.

THIS was an application for a peremptory mandamus, against the trustees of the Sailors' Snug Harbor, to restore the relator to his position as an inmate of that institution, with the privilege of all its franchises, from which he had been turned out by Thos. Mellville, the governor and administrator of the Harbor, in the month of September, 1868.

The relator filed a petition, and accompanied it with an affidavit relating the facts of his case. By this petition it appeared that the relator had been an inmate and beneficiary of the Harbor, an asylum for aged and invalid seamen, established under the will of Robert Richard Randall, by which will the testator bestowed twenty-two acres of land in the city of New York, for the purpose of founding a charitable institution for the support of aged, decrepid and worn out seamen. The board of trustees consists of the mayor, recorder, the president of the chamber of com-

merce, the president and vice president of the marine society, the oldest episcopalian minister and the oldest presbyterian minister in New York, with their successors in office, perpetually. The petition stated that the governor had turned the relator out of the Harbor by two policemen, and had refused to readmit him, because he, the relator, had defended himself when assaulted by Henry A. Curtis, a steward.

The court, on filing the petition *ex parte*, ordered an alternative mandamus to issue. to restore the relator, or to show cause. The respondents showed cause, alleging that on the 11th of September, 1868, the relator had in the dining hall of the institution violently assaulted the steward, Curtis, by clinching him around the body, and tearing his vest and shirt, and that he had declared then and there, in a loud voice, that certain officers of the institution, whom he named, were a set of liars, thieves and swindlers.

On the coming in of this answer, the relator filed an affidavit alleging that he was assaulted first at the table by Curtis. The respondents filed three affidavits, setting forth that the relator on other occasions had been guilty of gross acts of disobedience and disturbance while an inmate of the Harbor, and had twice before been convicted of assaults and batteries.

*Alanson Nash*, for the relator.

*J. L. Riker* and *William Fullerton*, for the defendants.

SUTHERLAND, J. By the will of the founder of the charity, the testamentary gift was to be used and applied for supporting the asylum or hospital "in such manner as the testamentary trustees or a majority of them may, from time to time, or their successors in office may, from time to time, *direct*."

By the act incorporating the trustees, they have power

to make all proper and necessary rules and regulations for the government of the corporation, not inconsistent with the constitution and laws of the United States, and of this State.

The 7th article or section of the 11th subdivision of the by-laws declares, among other things, that any inmate who shall be convicted " of leaving the premises, without permission from the governor, or one of the assistants, shall forfeit the benefits of the institution, and be expelled from it."

By the 13th section or article of the same subdivision of the by-laws, "inmates are strictly forbidden to indulge in contention, or boisterous and disorderly conversation *at the table,* and are solemnly enjoined to demean themselves in a decorous manner, as becoming aged and honest seamen."

The 19th section or article of the same subdivision of the by-laws forbids any inmate leaving the institution without permission of the governor.

The return to the alternative writ of mandamus in this case alleges that the relator, an inmate of the asylum or hospital, was, on the 11th of September, guilty of improper and disorderly conduct and conversation at the breakfast table, by making grossly improper remarks to the steward, which are set out, and by violently assaulting the steward.

The return further states that the steward reported this improper conduct to the governor of the institution, who afterwards dismissed the relator from the institution by the *direction of the executive committee thereof.*

The return further states that the relator was notified of the time of the examination of his conduct by the executive committee; that the relator did not attend, alleging that he had to attend in New York city as a witness, under a subpœna; and the return further alleges that the relator

was not in fact then under a subpœna to attend as a witness as he alleged.

The return refers to certain affidavits which were handed up with it, as verifying the facts stated in the return.

Since these papers were submitted, the counsel of the relator has handed me an affidavit of the relator, verified on November 30, alleging that on September 11, on the occasion referred to in the return, the steward first assaulted him, and that in the affray he did nothing more than was necessary to protect himself from, and get rid of, the assault of the steward. The relator does not deny in this affidavit that he made use of the language charged in the return, on this occasion.

The by-laws, which have been specified, appear to me to be reasonable and proper and valid. They appear to me to be authorized by the act of incorporation, and to be consistent with the administration of the charity which the founder of it had in view; but I am not willing to hold that the governor has the power to expel an inmate for a violation of either of the by-laws referred to, without the authority of the trustees, or at least of the trustees constituting the executive committee.

Probably intermediate the periods of the meetings of the trustees, the executive committee can act for them, in examining a charge of an alleged violation of a by-law.

The accused inmate should have reasonable notice of such examination, and an opportunity of being heard, of *exculpating* himself, and of disproving the charge.

Nor am I willing to concede that the action and proceeding of the trustees, or of the executive committee, in investigating such a charge, is beyond the control of, or a review by, this court.

In this case, I am satisfied from the return and all the affidavits and papers submitted, that the allegations in the return as to the conduct and conversation of the relator on the 11th of September are substantially true; that the

governor did not undertake to expel the relator without the direction of the trustees, or of the executive committee; that the governor reported the alleged misconduct and violation of the by-laws on the part of the relator to the trustees or executive committee, who examined into the truth of the charge, and directed the governor to expel the relator; and that the relator had reasonable notice of the time and place of such examination, but absented himself therefrom without a reasonable excuse.

Though I have been somewhat embarrassed in disposing of this case, from the manner in which the papers, affidavits, &c., have been submitted, yet I do not see how I can dispose of it otherwise than by dismissing the alternative writ, and denying the motion for the peremptory writ without costs.

Order accordingly.

[NEW YORK SPECIAL TERM, December 7, 1868. *Sutherland*, Justice.]